1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

LAUSTEVEION JOHNSON,

3:16-cv-00693-MMD-CLB

5

Plaintiff,

6

v.

7

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

8

J. YOUNGBLOOD, *et al.,*

Defendants.

9

10     This case involves a civil rights action filed by Plaintiff Lausteveion Johnson

11   ("Johnson") against Defendants D. Aja, Isidro Baca, Ruben Diaz, Jo Gentry, Holly

12   Skulstad, and Brian Williams (collectively referred to as "Defendants").[2] Currently

13   pending before the court is Defendants' motion for summary judgment. (ECF No. 40).

14   Johnson opposed the motion (ECF No. 45) and Defendants replied (ECF No. 47).  Also

15   before the court is Johnson's counter motion for summary judgment (ECF No. 46).

16   Defendants opposed the motion (ECF No. 49) and Johnson replied (ECF No. 51).

17   Johnson also filed a motion for oral argument on the summary judgment motions (ECF

18   No. 53).  For the reasons stated below, the court recommends that Defendants' motion

19   for summary judgment (ECF No. 40) be granted, Johnson's counter motion for summary

20   judgment (ECF No. 46) be denied, and Johnson's motion for oral argument (ECF No. 53)

21   be denied, in light of this report and recommendation.

22

23

24

25

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

26

27

28

[2] Johnson also named J. Youngblood, Miller, M. Brown, and Robbinson as defendants in this lawsuit. (*See* ECF No. 6). The claims against Defendants Youngblood, Miller, Brown, and Robbinson were dismissed as service was not effectuated. (*See* ECF No. 33).

1    **I.    BACKGROUND AND PROCEDURAL HISTORY**

2         Johnson is an inmate in the custody of the Nevada Department of Corrections

3    ("NDOC").  At the time relevant to this action, Johnson was incarcerated at the Northern

4    Nevada Correctional Center ("NNCC") and the Southern Desert Correctional Center

5    ("SDCC").  (ECF No. 6).  Proceeding *pro se*, Johnson filed the instant civil rights action

6    pursuant to 42 U.S.C. § 1983, alleging three counts and seeking injunctive relief and

7    monetary damages.  (ECF No. 6.)

8         According to Johnson's Complaint (ECF No. 6), the alleged events giving rise to

9    his claim are as follows: On December 24, 2015, while incarcerated at SDCC, Johnson

10   ordered a soft-covered Arabic religious book, prayer beads, and kufis from the Islamic

11   bookstore.  (*Id.* at 4.)  When the items arrived, Defendants Youngblood, Williams, and

12   Robbinson sent everything back, refusing to allow Johnson to receive any of the items,

13   even though he was charged for them.  (*Id.*)  The excuse Defendants gave was that the

14   book was hard-covered, even though it really was soft-covered.  (*Id.*)  Defendants failed

15   to follow the proper procedures when shipping the items back because he did not call

16   Johnson to the property room to see if the book was a hardcover and did not give him an

17   "Unauthorized Form."  (*Id.*)  Williams acknowledged that this was a violation and ordered

18   Youngblood to reorder the items.  (*Id.* at 6.)  Youngblood refused, and Williams refused

19   to force Youngblood to comply with the law.  (*Id.* at 5, 6.)  Johnson alleges that Islamic

20   literature, prayer breads, and kufis are central to the Islamic faith and that denying such

21   materials places a burden on his religious practice.  (*Id.* at 5.)

22        On October 4, 2016, Defendants Gentry and Diaz "rolled up" Johnson's property

23   at SDCC when Johnson was being transferred to NNCC for a trial in Reno, Nevada. (*Id.*)

24   Diaz refused to send Johnson's surge protector because he said Johnson was going to

25   NNCC for a lawsuit against the state and the only appliance that could go outside of the

26   bag with transport was a television. (*Id.*) Johnson alleges that this was contrary to

27   regulations that permitted him to bring three appliances. (*Id.*)

28

1        In addition, Johnson alleges that when he arrived at NNCC on October 4, 2016,
2    Defendants Baca and Skulstad placed him in Disciplinary Segregation even though he
3    had no Disciplinary Segregation time to serve. (*Id.*) They kept Johnson in Disciplinary
4    Segregation for two and a half to three weeks (*Id.*) Skulstad acknowledged that they
5    were doing this because of Johnson's pending lawsuit that was about to go to trial. (*Id.*)
6    In addition, Baca, Skulstad, and Miller took all of Johnson's property because he was
7    going to trial against NDOC. (*Id.*) Johnson received some of his property back on
8    October 8, 2016, but they never returned his boots, television, headphones, and Levi's
9    jacket. (*Id.*)

10        Further, Defendants Baca and AJA refused to issue Johnson a laundry bag for
11    him to send his clothing to the laundry. (*Id.*) As a result, Johnson was not able to send
12    his clothing to the laundry for cleaning from October 6, 2016, until at least November 22,
13    2016, when Johnson signed the complaint.  (*Id.*)

14        Finally, Johnson alleges that Defendants Williams, Gentry, Baca, and Youngblood
15    refused to allow Johnson to purchase Islamic rings, necklaces, and medallions that are
16    central to the Islamic faith.  (*Id.* at 6.)

17        Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order
18    allowing Johnson to proceed with the following claims: (1) First Amendment free
19    exercise of religion claim against Defendant Williams related to denial of a religious
20    book, prayer beads, and kufis; (2) First Amendment free exercise of religion claim
21    against Defendants Williams, Gentry, and Baca related to denial of Islamic rings,
22    necklaces, and medallions; (3)  Religious Land Use and Institutionalized Persons Act of
23    2000 ("RLUIPA") claim against Defendant Williams related to denial of a religious book,
24    prayer beads, and kufis; (4) RLUIPA claim against Defendants Williams, Gentry, and
25    Baca related to denial of Islamic rings, necklaces, and medallions; (5) Fourteenth
26    Amendment procedural due process claim against Defendants Baca and Skulstad
27    related to being placed in disciplinary segregation without notice or a hearing; (6) First
28    Amendment retaliation claim against Defendants Williams, Baca, Diaz, Skulstad, and

1  AJA; and (7) Eighth Amendment conditions of confinement claim against Defendants

2  AJA and Baca related to denying Johnson clean clothing for a prolonged period of time.

3  (ECF No. 5.)  On April 4, 2019, Defendants filed their motion for summary judgment

4  asserting they are entitled to summary judgment because the claims are either not

5  supported by the record or any competent testimony, Johnson has not properly

6  exhausted his administrative remedies, and the Defendants are entitled to qualified

7  immunity.[3]  (ECF No. 40.)  Johnson opposed the motion and filed a counter motion for

8  summary judgment (ECF Nos. 45, 46).

9  **II.    LEGAL STANDARD**

10         Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle*

11  *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly

12  grants summary judgment when the record demonstrates that "there is no genuine

13  issue as to any material fact and the movant is entitled to judgment as a matter of law."

14  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify

15  which facts are material. Only disputes over facts that might affect the outcome of the

16  suit under the governing law will properly preclude the entry of summary judgment.

17  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v.*

18  *Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a

19  reasonable jury could find for the nonmoving party. *Id.* Conclusory statements,

20  speculative opinions, pleading allegations, or other assertions uncorroborated by facts

21  are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509

22  F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th

23  Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ

24  when interpreting the record; the court does not weigh the evidence or determine its

25  _____

26  [3]     Because the court finds that Defendants' motion for summary judgment should be
   granted as to all claims based on either Johnson's failure to exhaust or because his
27  claims are not supported by the record, it need not address Defendants' qualified
28  immunity argument.

1    truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw.*
2    *Motorcycle Ass'n*, 18 F.3d at 1472.

3         Summary judgment proceeds in burden-shifting steps. A moving party who does
4    not bear the burden of proof at trial "must either produce evidence negating an essential
5    element of the nonmoving party's claim or defense or show that the nonmoving party
6    does not have enough evidence of an essential element" to support its case. *Nissan*
7    *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the
8    moving party must demonstrate, on the basis of authenticated evidence, that the record
9    forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as
10   to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285
11   F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising
12   therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763
13   F.3d 1060, 1065 (9th Cir. 2014).

14        Where the moving party meets its burden, the burden shifts to the nonmoving
15   party to "designate specific facts demonstrating the existence of genuine issues for
16   trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).
17   "This burden is not a light one," and requires the nonmoving party to "show more than
18   the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must
19   come forth with evidence from which a jury could reasonably render a verdict in the
20   non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the
21   summary judgment motion only by setting forth specific facts that illustrate a genuine
22   dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477
23   U.S. at 324. Although the nonmoving party need not produce authenticated evidence,
24   Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as
25   to the material facts" will not defeat a properly-supported and meritorious summary
26   judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
27   586–87 (1986).

28

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III.    DISCUSSION

### A.  Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B.  First Amendment Free Exercise and RLUIPA Claims

Johnson's First Amendment free exercise and RLUIPA claims consist of two distinct sets of facts.  First, Johnson alleges that Defendants Williams, Gentry, and Baca refused to allow Johnson to purchase Islamic rings, necklaces, and medallions that are central to the Islamic faith.  (ECF No. 6 at 6.)  Second, Johnson claims that he ordered a soft-cover religious book, prayer beads, and kufis, but the items were sent back.  (*Id.* at 4-6.)  Johnson claims that Defendants Williams acknowledged that the return of the items was a violation of Johnson's rights and ordered Youngblood (who is

no longer a defendant in this action) to reorder the items.  (*Id.*)  Youngblood refused to order the items, and Defendant Williams did not require him to reorder the items.  (*Id.*)

### 1.    Claim Regarding Islamic Rings, Necklaces, and Medallions

Defendants argue that there is no evidence that Johnson ever filed a grievance regarding his claim that he was denied possession of Islamic rings, necklaces, and medallions, and therefore, Johnson failed to exhaust his administrative remedies as to this claim.  (ECF No. 40 at 6-8.)

### i.    Exhaustion under the Prisoner Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion is mandatory.  *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  The PLRA requires "proper exhaustion" of an inmate's claims.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue."  *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90).

Failure to exhaust is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate.  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).  When a remedy is essentially "unknowable" such that no reasonable

inmate can make sense of what it demands, it is considered to be unavailable. *See Ross*, 136 S.Ct. at 1859-60.

### ii.      NDOC's Inmate Grievance System

The procedural rules relevant to exhaustion "are defined not by the PLRA, but by the prison grievance process itself." *Bock*, 549 U.S. at 218. The grievance process at NDOC institutions is governed by Administrative Regulation ("AR") 740.

NDOC's grievance process features three levels, beginning with the informal grievance. If an inmate is unable to resolve the issue through discussion with an institutional caseworker, the inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims," or within ten days for any other issues, including classification and disciplinary. AR 740.04, 740.05(4). The inmate's failure to submit the informal grievance within this time frame "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." *Id.* at 740.05(8). NDOC staff is required to respond within forty-five days. *Id.* at 740.05(12). An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. *Id.*

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." *Id.* at 740.06(2). The grievance is reviewed by an official of a higher level, who has forty-five days to respond. *Id.* at 740.06(1), (4). Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. *Id.* at 740.07(1). Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached. *Id.* at 740.07(3), (4). Once an inmate receives a response to the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

1

2

iii.    **Exhaustion of Claim regarding Islamic rings, necklaces, and medallions**

3

4

Defendants argue that Johnson failed to file a grievance related to denial of possession of Islamic rings, necklaces, or medallions.  (ECF No. 40 at 6-8.)   In opposition, Johnson claims that he submitted grievances on the issue, but the Defendants "refused to respond" to the informal grievance.  (ECF Nos. 45/46 at 5-6.) Because Defendants "refused to respond" to the informal grievance, Johnson filed a first level grievance.  (*Id.*)  Johnson attaches the alleged grievances to his Opposition. (*Id.* at 33-36.)

5

6

7

8

9

The attached grievances consist only of Johnson's handwritten statements and are labeled "informal" and "1st level."  (*See id.*)  The grievances do not contain a grievance log number, do not contain a "received" stamp, do not contain a response, and do not reflect that any NDOC employee received the grievances.  (*Id.*)

10

11

12

13

It is well established that PLRA requires "proper exhaustion" of an inmate's claims.  *See Woodford*, 548 U.S. at 90.  Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin*, 557 F.3d at 1119 (citing *Woodford*, 548 U.S. at 90).  Additionally, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Woodford*, 548 U.S. at 90.  Here, it appears Johnson failed to follow all required steps to allow prison officials to reach the merits of the issue.  Aside from his self-serving statements that he filed grievances, there is no evidence that Johnson actually filed grievances related to Islamic rings, necklaces, and medallions that were received by NDOC employees.  Accordingly, the court finds that Johnson failed to exhaust his administrative remedies pursuant to AR 740 prior to initiating this action.

14

15

16

17

18

19

20

21

22

23

24

The burden now shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)).  Johnson provides no

25

26

27

28

evidence to show that administrative remedies were unavailable to him.  Johnson only asserts that Defendants "refused to respond" to the grievances but does not provide any evidence of his assertion.  Johnson's self-serving statement provides an insufficient basis from which a reasonable jury can find in his favor, in light of the documentary evidence Defendants have presented.  Because Johnson presents no evidence that administrative remedies were effectively "unavailable," the court concludes that Johnson failed to exhaust available administrative remedies prior to filing this action as to his First Amendment free exercise and RLUIPA claims related to the Islamic rings, necklaces, and medallions.

### 2.    Claim Regarding Religious Book, Prayer Beads, and Kufis

Defendants argue that Johnson's First Amendment free exercise and RLUIPA claims regarding the denial of the religious book, prayer beads, and kufis should be dismissed because Johnson was permitted to reorder the items and Defendants are entitled to qualified immunity.  (ECF No. 40 at 8-11.)

### i.    First Amendment – Free Exercise

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const. amend. I. The United States Supreme Court has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The Supreme Court also has recognized that an inmate's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* Therefore, to raise a viable claim under the Free Exercise Clause, a prisoner must initially make a showing that the defendant has substantially burdened a sincerely held religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). However, if such a belief is substantially

1  burdened, "the regulation is valid if it is reasonably related to legitimate penological

2  interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

3         During summary judgment, courts evaluate prison regulations alleged to infringe

4  on constitutional rights under the "reasonableness" test set forth in *Turner*, 482 U.S. at

5  89-91; *Shabazz*, 482 U.S. at 349; *see Hrdlicka v. Reniff*, 631 F.3d 1044, 1046-50 (9th

6  Cir. 2011) (analyzing how the *Turner* factors applied during summary judgment on

7  appeal).   Under *Turner*, a court will consider: 1) whether there is "a valid, rational

8  connection between the prison regulation and the legitimate governmental interest put

9  forward to justify it"; (2) whether "there are alternative means of exercising the right that

10  remain open to prison inmates"; (3) if "accommodation of an asserted right will have a

11  significant ripple effect on fellow inmates or on prison staff, courts should be particularly

12  deferential to the informed discretion of corrections officials"; and (4) the absence of

13  "ready alternatives" to a particular prison regulation is evidence that it is reasonable and

14  not "an exaggerated response to prison concerns." *Turner*, 482 U.S. at 89-90 (citations

15  and internal quotations omitted).

16                     ii.    **Religious Land Use and Institutionalized Persons Act of
17                            2000**

18         The RLUIPA, which governs religious exercise by institutionalized persons,

19  provides in relevant part:

20         No government shall impose a substantial burden on the religious exercise
           of a person residing in or confined to an institution . . . unless the
21         government demonstrates that imposition of the burden on that person–(1)
           is in furtherance of a compelling governmental interest; and (2) is the least
22         restrictive means of furthering that compelling governmental interest.

23  42 U.S.C. § 2000cc-1(a)(1)-(2). Thus, a plaintiff has the burden of proving that the

24  prison's actions implicated the plaintiff's religious exercise and that the prison's actions

25  substantially burdened that exercise of religion. *Holt v. Hobbs*, 135 S. Ct. 853, 862

26  (2015). Once the plaintiff makes that prima facie showing, the burden shifts to the

27  defendant to prove that its actions are in furtherance of a compelling governmental

28  interest and are the least restrictive means of furthering that interest. *Id.* at 863. The

1   RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether
2   or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-
3   5(7)(A); *Holt*, 135 S. Ct. at 860. "Congress mandated that this concept 'shall be
4   construed in favor of a broad protection of religious exercise, to the maximum extent
5   permitted by the terms of this chapter and the Constitution.'" *Holt*, 135 S. Ct. at 860
6   (quoting § 2000cc–3(g)).  RLUIPA does not authorize suits for damages against state
7   officials in their individual capacities.

8                               **iii.   Analysis**

9         Johnson alleges that on December 24, 2015, while incarcerated at SDCC,
10  Johnson ordered a soft-covered Arabic religious book, prayer beads, and kufis from the
11  Islamic bookstore.  (ECF No. 6 at 4.)  When the items arrived, Defendants Youngblood,
12  Williams, and Robbinson[4] sent everything back, refusing to allow Johnson to receive
13  any of the items, even though he was charged for them.  (*Id.*)  The excuse Defendants
14  gave was that the book was hard-covered, even though it really was soft-covered.  (*Id.*)
15  Youngblood failed to follow the proper procedures when shipping the items back
16  because he did not call Johnson to the property room to see if the book was a
17  hardcover and did not give him an "Unauthorized Form."  (*Id.*)  Defendant Williams
18  acknowledged that this was a violation and ordered Youngblood to reorder the items.
19  (*Id.* at 6.)  Youngblood refused, and Williams refused to force Youngblood to comply
20  with the law.  (*Id.* at 5, 6.)

21        Defendants argue Johnson's claims should be dismissed because Johnson was
22  permitted to reorder his items pursuant to the requirements of Administrative Regulation
23  810.3 and therefore his ability to exercise his beliefs was not substantially burdened.
24  (ECF No. 40 at 9-10.)

25        In support of his opposition and counter motion for summary judgment, Johnson
26  provides a signed declaration.  (ECF Nos. 45/46 at 20-21.)  In his declaration, Johnson

27
28  [4] Defendants Youngblood and Robbinson have been dismissed from this action.  (*See* ECF No. 33.)

states that he is a devout Muslim, having "prayer beads, Islamic books, and kufis [are] central to the Islamic faith and are a part of [Johnson's] sincerely held religious beliefs," and "to be denied these items places an extreme burden on [his] religious exercise." (*Id.*)  Aside from these conclusory statements, Johnson provides no evidence that the Defendants' actions substantially burdened his sincerely held religious beliefs.   "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."  *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).   Because Johnson presents no evidence that having his items sent back to the publisher substantially burdened his ability to exercise his beliefs, especially in light of the fact that he was able to reorder the items, the court recommends that Defendants' motion for summary judgment be granted as to this claim.

### C.    Fourteenth Amendment – Procedural Due Process

In his complaint, Johnson alleges that when he arrived at NNCC on October 4, 2016, Defendants Baca and Skulstad placed him in disciplinary segregation even though he had no disciplinary segregation time to serve. (ECF No. 6 at 5.) Johnson alleges he was kept in disciplinary segregation for two and a half to three weeks. (*Id.*) Johnson alleges that Defendant Skulstad acknowledged that Defendants were doing this because of Johnson's pending lawsuit that was about to go to trial. (*Id.*)

Defendants argue that there is no evidence that Johnson was placed in disciplinary segregation upon his arrival at NNCC, but instead evidence shows he was placed in administrative segregation for a period of six days until a Warden could determine whether he could be housed in the general prison population.  (ECF No. 40 at 5, 11-12.)   The evidence provided by Defendants is a declaration from NNCC Warden Baca.  (*See* ECF No. 40-9.)  In his sworn declaration, Defendant Baca states that on October 6, 2016, when Johnson arrived at NNCC, he was placed in administrative segregation until a Warden could determine where he should be housed within NNCC due to his prior disciplinary history.  (*Id.* at 3.)  Defendant Baca states this

1    is standard procedure for inmates with a prior disciplinary history. (*Id.*)  Defendant Baca

2    states that Johnson was not placed in disciplinary segregation at NNCC in October

3    2016.  (*Id.*)  Defendant Baca states on October 12, 2016, a Warden was able to review

4    Johnson's file and determine he could be placed in Unit 4, a general population unit.

5    (*Id.*)  Finally, Defendant Baca states that while in administrative segregation, Johnson

6    had the same access to the Law library as any other inmate in general population.  (*Id.*)

7         In his opposition, Johnson claims he would have been able to prove he was

8    placed in disciplinary segregation if he had been afforded discovery in this case.  (ECF

9    Nos. 45/46 at 10-11.)

10        A review of the record shows that on August 31, 2018, the court denied

11   Johnson's motion for discovery as premature (ECF No. 24).  On September 19, 2018,

12   an answer was filed by Defendants (ECF No. 25).   On September 28, 2018, a

13   scheduling order was issued in this case (ECF No. 28).  Johnson served interrogatories

14   on November 12, 2018, which were responded to by Defendants on December 14,

15   2018 (ECF No. 39, n. 1).  Discovery ended on December 27, 2018 (ECF No. 28).  On

16   March 27, 2019, well after the close of discovery, Johnson filed a motion to conduct

17   discovery (ECF No. 38), which the court denied (ECF No. 50).  Based on the procedural

18   history of this case, it is clear Johnson had the opportunity to conduct discovery.

19   Therefore, the court is not persuaded that Johnson could prove he was placed in

20   disciplinary segregation, as opposed to administrative segregation.   Based on the

21   evidence in the record, specifically Warden Baca's affidavit, the court finds that Johnson

22   was placed in administrative segregation, not disciplinary segregation.  Therefore, the

23   court must determine whether being placed in administrative segregation for six days

24   violated Johnson's due process rights.

25              **1.    Administrative Segregation**

26        Fourteenth Amendment claims for denial of procedural due process entail two

27   components. First, the court must determine that the plaintiff possessed a

28   constitutionally protected interest, such that due process protections apply. Second, and

1    if so, the court must examine the level of due process demanded under the
2    circumstances. A claim lies only where the plaintiff has a protected interest, and the
3    defendant's procedure was constitutionally inadequate.

4        The Fourteenth Amendment of the United States Constitution guarantees all
5    citizens, including inmates, due process of law.  However, the Constitution protects only
6    certain interests with the guarantees of due process; an inmate's right to procedural due
7    process arises only when a constitutionally protected liberty or property interest is at
8    stake.  *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).  Such interests may arise from
9    the Constitution itself or from state law.

10        Under the Due Process Clause, an inmate does not have liberty interests related
11   to prison officials' actions that fall within "the normal limits or range of custody which the
12   conviction has authorized the State to impose."  *Sandin v. Conner,* 515 U.S. 472, 478
13   (1995) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)).  The Clause contains no
14   embedded right of an inmate to remain in a prison's general population.  *Id.* at 485–86.
15   Further, "the transfer of an inmate to less amenable and more restrictive quarters for
16   nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a
17   prison sentence."  *Hewitt v. Helms,* 459 U.S. 460, 468 (1983), *overruled on other
18   grounds by Sandin,* 515 U.S. at 472–73. "Thus, the hardship associated with
19   administrative segregation, such as loss of recreational and rehabilitative programs or
20   confinement to one's cell for a lengthy period of time, does not violate the due process
21   clause because there is no liberty interest in remaining in the general population."  *Cnty.
22   of Kern,* 45 F.3d at 1315.  At bottom, "[o]nly the most extreme change in conditions of
23   confinement have been found to directly invoke the protections of the Due Process
24   Clause...." *Chappell v. Mandeville,* 706 F.3d 1052, 1063 (9th Cir. 2013).

25        State law also may create liberty interests. Where segregated housing or other
26   prison sanctions "impose[ ] atypical and significant hardship on the inmate in relation to
27   the ordinary incidents of prison life[,]" due process protections arise. *Sandin,* 515 U.S. at
28   483–84. What matters is not the particular label or characterization of the segregation or

15

1   sanction, but instead, its underlying nature: "[n]o matter how a prisoner's segregation

2   (or other deprivation) is labeled by the prison or characterized by the prisoner, a court

3   must examine the substance of the alleged deprivation and determine whether it

4   constitutes an atypical and significant hardship...." *Hernandez v. Cox,* 989 F.Supp.2d

5   1062, 1068–69 (D.Nev.2013).

6        When conducting the atypical-hardship inquiry, courts examine a "combination of

7   conditions or factors...." *Keenan v. Hall,* 83 F.3d 1083, 1089 (9th Cir.1996). These

8   include: (1) the extent of difference between segregation and general population; (2) the

9   duration of confinement; and (3) whether the sanction extends the length of the

10   prisoner's sentence. *See Serrano,* 345 F.3d at 1078 (citing and discussing *Sandin,* 515

11   U.S. at 486–87). That a particular punishment or housing placement is more restrictive

12   than administrative segregation or general population privileges is, alone, not enough:

13   even where "the conditions in segregation are worse than those a prisoner will typically

14   encounter in prison, the Court must still consider whether the conditions are extreme

15   enough in nature and duration or whether they will necessarily affect the length of a

16   prisoner's sentence." *Hernandez,* 989 F.Supp.2d at 1069. In addition, the Supreme

17   Court has held that the loss of prospective work and good-time credits that ultimately

18   may affect an earlier release from incarceration is "too attenuated" to support an

19   atypical hardship finding under the third factor. *See Sandin,* 515 U.S. at 487.

20   "Typically," as the Ninth Circuit has stated, "administrative segregation in and of itself

21   does not implicate a protected liberty interest" under the *Sandin* factors.  *Serrano,* 345

22   F.3d at 1078.

23        The question is whether Johnson had a liberty interest in his administrative

24   segregation.  The court is persuaded by this District's holding, on a prior occasion, that

25   an inmate held in administrative segregation as he awaited the availability of suitable

26   housing in general population unit lacked an actionable due process claim. *Garcia v.*

27   *Burns,* 787 F.Supp. 948, 951 (D. Nev. 1992); *see also Grayson v. Rison,* 945 F.2d 1064

28   (9th Cir. 1991). Because Johnson, who shoulders the burden of proof on this point, has

1  not designated facts from which a reasonable jury could find he has a liberty interest,

2  Defendants are entitled to summary judgment as to this claim.

3  **D.    First Amendment Retaliation Claim**

4  Johnson alleges that the return of the religious book, prayer beads, and kufis was

5  an action taken in retaliation for Johnson filing grievances against Defendant Williams

6  and the SDCC.  (ECF No. 6 at 9.)  Johnson also claims that he was placed in disciplinary

7  segregation and denied his surge protector in retaliation for filing a civil action against

8  the NDOC.  (*Id.*)  Finally, Johnson claims that he was denied the right to send clothing to

9  the laundry in retaliation for filing the civil action.  (*Id.* at 9-10.)

10  It is well established in the Ninth Circuit that prisoners may seek redress for

11  retaliatory conduct by prison officials under § 1983.  *Rhodes v. Robinson*, 408 F.3d 559,

12  567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  "Prisoners

13  have a First Amendment right to file grievances against prison officials and be free from

14  retaliation for doing so."  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).  A

15  retaliation claim has five elements: (1) a state actor took some adverse action against

16  the inmate (2) because of (3) the inmate's protected First Amendment conduct, and that

17  the action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not

18  reasonably advance a legitimate correctional goal.  *Rhodes*, 408 F.3d at 567–68.

19  To prevail against Defendants' motion for summary judgment, Johnson must

20  demonstrate a triable issue of material fact on each element of his retaliation claims.

21  *Brodheim*, 584 F.3d at 1269 n.3.  In support of summary judgment, Defendants argue

22  that Johnson cannot carry his burden with respect to elements two and five.  (ECF No.

23  40 at 14-15.)

24  **1.    Retaliatory Motive**

25  To satisfy the second element of a retaliation claim, a plaintiff must show that his

26  First Amendment activity was "the 'substantial' or 'motivating' factor behind the

27  defendant's conduct."  *Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v.*

28  *Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)).  The evidence establishing such a motive

1   is often circumstantial, *see id.*, but "mere speculation that defendants acted out of
2   retaliation is not sufficient."  *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

3       Defendants contend that there is no causal connection between the alleged
4   retaliatory acts and the filing of grievances or pending cases against the NDOC.  (ECF
5   No. 40 at 14-15.)  Defendants argue that Johnson has presented no evidence that would
6   establish any retaliatory intent, and Johnson's mere speculation that there is a causal
7   connection is not enough to raise a genuine issue of material fact.  (*Id.*; citing *Nelson v.*
8   *Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996)).

9       In his opposition, Johnson reiterates that he was retaliated against because of the
10  "volume of grievances" he has filed against SDCC and various NDOC employees and
11  because of his pending civil trial against NDOC.  (ECF Nos. 45/46 at 13-16.)  However,
12  aside from his bare assertions, plaintiff provides no evidence that the alleged retaliatory
13  actions occurred *because of* his grievances or lawsuits.  For example, Johnson does not
14  assert that any Defendant made any retaliatory statements to him or anyone else.
15  Johnson's mere speculation that there is a causal connection is not enough to raise a
16  genuine issue of material fact.  *See Nelson*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).
17  Johnson has not shown that his First Amendment activity was the substantial or
18  motivating behind Defendants' actions, and, therefore, he has not carried his burden of
19  demonstrating a genuine issue for trial.  As no reasonable jury could conclude that the
20  alleged retaliatory acts occurred *because of* grievances or lawsuits, Defendants are
21  entitled to summary judgment.

22      Because the court finds that Johnson cannot prove that adverse action was taken
23  against him *because of* his protected First Amendment conduct, it need not address
24  Defendants' other arguments or defenses as to the retaliation claim.

25      **E.    Eighth Amendment Conditions of Confinement Claim**

26      Johnson claims he was denied a laundry bag to send clothing to the laundry when
27  he was housed at NNCC from October 6, 2016 through November 22, 2016.  (ECF No. 6
28  at 4.)  Defendants argue that Johnson failed to properly exhaust his administrative

1  remedies regarding this claim.  (ECF No. 40 at 13.)  Grievance 20063038081 addresses

2  Johnson's complaint regarding the alleged refusal to issue a laundry bag.  (ECF No. 40-

3  7.)  However, Defendants argue that this grievance was never appealed through level 2.

4  (ECF No. 40 at 13.)   Defendants argue that the grievance was rejected because

5  Johnson was seeking monetary resolution and failed to file a form DOC-3095, an

6  administrative claim form required by AR 740.05(7)(B).  Johnson was given five days to

7  correct this issue and resubmit his grievance, but it does not appear Johnson ever

8  corrected this issue. (*See* ECF No. 40-2 at 32.)   Therefore, Defendants assert that

9  Johnson's failure to correct this error is fatal to his conditions of confinement claim for

10  failure to provide laundry services.

11       The court has thoroughly reviewed the grievance at issue (ECF No. 40-7) and

12  finds that Johnson failed to properly exhaust his administrative remedies.  On November

13  16, 2016, Johnson filed informal Grievance Number 20063038081, which discusses the

14  refusal to issue a laundry bag to Johnson at NNCC.  (*See id.* at 3.)  In a memorandum

15  dated December 30, 2016, Associate Warden Brian Ward, attached the grievance and

16  stating the grievance was being returned because "Your remedy contains a request for a

17  monetary resolution, which requires you to file form DOC-3095(Administrative Claim),

18  per AR 740. Therefore, this is an Improper grievance and will not be processed until

19  corrected. Make corrections and re-submit within 5 days of receipt of this memorandum."

20  (*Id.*)  The memorandum is signed and dated March 3, 2017.  (*See id.*)  A review of the

21  grievance history report does not show that Johnson ever filed a further grievance or

22  attempted to correct the grievance.  (*See* ECF No. 40-2.)

23       Johnson asserts that he would have received a notice of charges if he had

24  appealed  Grievance  20063038081,  therefore,  he  effectively  exhausted  his

25  administrative remedies.  (ECF Nos. 45/46 at 12-13.)  Johnson again claims he has not

26  been afforded the opportunity to acquire the requisite supporting evidence.  (*Id.* at 12.)

27  As discussed above, the record shows Johnson was afforded an opportunity to conduct

28  discovery and any arguments to the contrary are unavailing.

It is well established that PLRA requires "proper exhaustion" of an inmate's claims. *See Woodford*, 548 U.S. at 90. Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin*, 557 F.3d at 1119 (citing *Woodford*, 548 U.S. at 90). Additionally, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Here, it appears Johnson failed to follow all required steps to allow prison officials to reach the merits of the issue. Specifically, Johnson failed to pursue Grievance 20063038081. Accordingly, the court finds that Johnson failed to exhaust his administrative remedies pursuant to AR 740 prior to initiating this action.

The burden now shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao*, 103 F.3d at 778 n. 5). Johnson provides no evidence to show that administrative remedies were unavailable to him. Johnson only asserts that he would have received a notice of charges if he had appealed his grievance. Importantly, this is the first time Johnson raises this issue. Johnson's self-serving statement provides an insufficient basis from which a reasonable jury can find in his favor, in light of the documentary evidence Defendants have presented. Because Johnson presents no evidence that administrative remedies were effectively "unavailable," the court concludes that Johnson failed to exhaust available administrative remedies prior to filing this action as to his Eighth Amendment conditions of confinement claim.

## IV.    CONCLUSION

Based upon the foregoing, the court recommends Defendants' motion for summary judgment (ECF No. 40) be granted, that Johnson's counter motion for summary judgment (ECF No. 46) be denied, and Johnson's motion for oral argument (ECF No. 53) be denied as moot in light of this report and recommendation. The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.      RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 40) be **GRANTED**; and

**IT IS FURTHER RECOMMENDED** that Johnson's counter motion for summary judgment (ECF No. 46) be **DENIED**; and

**IT IS FURTHER RECOMMENDED** that Johnson's motion for oral argument (ECF No. 53) be **DENIED** as moot, in light of this report and recommendation.

**DATED**:  December 3, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**